UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EVAN KRAUS,

    Plaintiff,

vs.

CITIBANK, N.A.,

    Defendant.

Case No.: 12-cv-06484-YGR

**ORDER GRANTING MOTION TO DISMISS COMPLAINT**

On October 9, 2012, Plaintiff Evan Kraus filed a complaint in state court against Defendant Citibank, N.A. (Notice of Removal [Dkt. No. 1], Ex. A.)[1] Citibank removed the action to federal court on December 21, 2012. In the Complaint, Kraus alleges that Citibank failed to perform its required duties as a fiduciary and escrow agent pursuant to the terms of an escrow agreement. Kraus alleges four claims against Citibank: (1) gross negligence; (2) breach of fiduciary duty; (3) breach of contract; and (4) breach of the implied covenant of good faith and fair dealing.

Pending before the Court is Citibank's Motion to Dismiss Complaint. (Dkt. No. 7.) Kraus filed an Opposition to Defendant's Motion to Dismiss (Dkt. No. 17), and Citibank filed a reply in turn (Dkt. No. 21). On May 28, 2013, the Court held oral argument on the Motion. (Dkt. No. 24.) The Court requested supplemental briefing on the issue of when an escrow agent's duties arise (at funding of the escrow versus the time of the signing of the agreement), which the parties provided on June 11, 2013. (Dkt. Nos. 25 & 26.)

---

[1] The Court notes that the copies of the Complaint and Exhibit A thereto filed with the Notice of Removal are, at times, completely illegible. At the Court's request, Plaintiff's counsel provided more legible copies of the Complaint and its Exhibit A. The Court notes that while the more legible version of Exhibit A is not identical to version filed on ECF (namely, it does not contain all of the signatures), Plaintiff's counsel also provided copies to counsel for Citibank, who did not object to the documents provided to the Court.

Having carefully considered the papers submitted and the pleadings in this action, the arguments of counsel, and for the reasons set forth below, the Court hereby **GRANTS** Citibank's Motion to Dismiss Complaint because Kraus has failed to state a claim against Citibank for its role as a passive escrow agent with an unfunded escrow account.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In May 2006, Kraus entered into a written employment agreement ("Employment Agreement") with LRG Capital Group, LLC ("LRG Capital"). (Compl. ¶ 12.) Lawrence Goldfarb negotiated Kraus' employment package on behalf of LRG Capital.[2] (*Id.* ¶ 11.) Kraus requested a severance arrangement, and LRG Capital agreed to provide Kraus with a severance payment of $250,000 in the event LRG Capital terminated his employment without cause. (*Id.*) As set forth below in more detail, LRG Capital agreed to place the $250,000 in escrow. This case arises because LRG Capital failed to do so and Kraus now seeks recovery against Citibank, as the escrow agent.

Kraus' Employment Agreement commenced effective June 1, 2006. (Compl. ¶ 12.) The agreement provided, among other things, that Kraus' employment was at will and if terminated without cause, the $250,000 severance payment would be paid in four equal installments beginning on the termination effective date. (*Id.* ¶¶ 13–14.) In addition, the Employment Agreement contained the following provision:

> For the sole and exclusive purpose of funding the preceding severance payment, [LRG Capital] shall establish a business escrow account with Citibank and deposit $250,000 into such account by no later than May 29, 2006. All interest in the account shall be for the benefit of [LRG Capital]. The business escrow account of the severance payment shall be governed by an escrow agreement which shall provide for payment of the severance payment as set forth in the preceding paragraph.

(*Id.* ¶ 15) (alterations supplied in Complaint). Pursuant to the Employment Agreement, the severance provision survived the termination of Kraus' employment. (*Id.* ¶ 16.)

---

[2] The Complaint alleges that "Goldfarb and [the] entities he controls (presumably including LRG Capital) are in receivership pursuant to an order of the U.S. District Court for the Northern District of California, which the District Court created at the request of the Securities & Exchange Commission to enforce a consent decree that arose from alleged securities fraud of Goldfarb. In aid of the receivership, the District Court has stayed all proceedings against Goldfarb and his controlled-entities." (Compl. ¶ 10.)

2

In accordance with the Employment Agreement, Citibank, LRG Capital, and Kraus entered into a written escrow agreement ("Escrow Agreement").  (*See* Compl., Ex. A.)  Robson English signed the Escrow Agreement on behalf of Citibank on or about May 31, 2006.  (Compl. ¶ 17.)  The Escrow Agreement provided that "[b]y no later than May 23, 2006, the Company [LRG Capital] will deposit the sum of $250,000 into an escrow account with Citibank named as escrow agent."  (Escrow Agreement ¶ 1; Compl. ¶ 21.)  The agreement provided instructions for disbursement of the funds (Escrow Agreement ¶¶ 1–2) and stated that the instructions may be modified or withdrawn with a writing signed by LRG Capital and Kraus at any time prior to Citibank having executed the instructions (*id.* ¶ 3).   Kraus alleges that the payment of the $250,000 was a "material fact underlying the escrow and integral to performance of Citibank as fiduciary under the Escrow Agreement."  (Compl. ¶ 22.)  Kraus further alleges that the agreement "did not contain any conditions precedent for opening the escrow."  (*Id.* ¶ 18; *see id.* ¶ 54.)

The Escrow Agreement was fully integrated[3] and contained a "Notices" provision requiring mutual notification: "[a]ny notice given to one party hereunder shall be given to all parties other than the party sending such notice."  (Escrow Agreement ¶ 6.)  It also allowed Citibank to "resign as escrow agent hereunder by giving thirty (30) days written notice to the parties. . . . In such event, Citibank's only duty shall be to hold the funds until such time as [LRG Capital] and Mr. Kraus provide Citibank with written notice appointing a successor escrow agent."  (*Id.* ¶ 11; Compl. ¶ 24.) By its terms, the Escrow Agreement would terminate in five years unless extended by written consent of the parties.  (Escrow Agreement ¶ 9.)

Kraus alleges that in 2009, Goldfarb confirmed to him that LRG Capital had funded the escrow.  (Compl. ¶ 26.)  Even when Kraus suggested using the escrow funds for a real estate investment that Goldfarb was soliciting, Goldfarb allegedly "told [Kraus] that using those funds was not in [Kraus'] best interest and he [Goldfarb] would not allow it.  Goldfarb did not disclose and actively concealed that LRG Capital had not funded the escrow, which Citibank—which had an active

---

[3] The Escrow Agreement "set[] forth the entire understanding among the parties with respect to the subject matter hereof" and provided that the "instructions shall not be amended or supplemented except in a written document signed by all the parties hereto." (Escrow Agreement ¶¶ 12(a)–(b).)

3

and longstanding business relationship with the Goldfarb entities, including LRG Capital—well knew and also concealed from Mr. Kraus." (*Id.*)[4]

In February 2011, LRG Capital terminated Kraus' employment without cause. (Compl. ¶ 27.) At that time, Goldfarb offered to compensate Kraus as an independent contractor at another Goldfarb-controlled entity, in exchange for Kraus agreeing to modify the severance provision of his Employment Agreement. (*Id.* ¶ 28.) Kraus alleges this offer was fraudulent and "designed to continue the conspiracy to conceal from Mr. Kraus that LRG Capital had not funded the escrow." (*Id.*) Kraus attempted to accept Goldfarb's offer to work as an independent contractor, but was informed that company did not have money to pay him for his services. (*Id.* ¶ 29.)

On March 10, 2011, Kraus emailed Robson English at Citibank to request disbursement of the escrowed funds pursuant to the Escrow Agreement. (Compl. ¶ 31.) Citibank responded on March 21, 2011, stating as follows:

> Please be advised that the condition precedent to the creation of the escrow, namely the deposit of the $250,000 by the Company, never occurred. As a result of this failure, no escrow was ever created and the deposit account closed automatically with a zero balance.

(*Id.* ¶ 34.) Prior to this communication, Citibank had never notified Kraus that LRG Capital had failed to fund the escrow. In fact, Citibank never sent a single communication or notice to Kraus regarding the escrow until March 21. (*Id.* ¶ 35.) Kraus alleges that he never consented to the termination of the escrow and Citibank did not have the authority to terminate the Escrow Agreement without his consent. (*Id.* ¶ 36.)

Based on the aforementioned conduct, the Complaint alleges that Citibank was grossly negligent in performing its fiduciary duties in four ways. First, it actively concealed that LRG Capital failed to fund the escrow. Second, it purposefully failed to inform Kraus that LRG Capital had not

---

[4] Kraus further baldly alleges on information and belief that Citibank "knew that LRG Capital did not intend to fund the escrow (and withheld that information from Mr. Kraus) and informed LRG Capital in 2006 that it intended to close the escrow because of the failure of LRG Capital to fund the requisite escrow funds (and withheld that information too from Mr. Kraus). In doing so, Citibank favored LRG Capital and the Goldfarb entities over its principal Mr. Kraus to the detriment of the rights of Mr. Kraus as principal under the Escrow Agreement." (Compl. ¶ 39.) In addition, Kraus alleges that "Citibank knew that Mr. Kraus was relying on [it] to keep him informed of material developments with respect to the escrow." (*Id.* ¶ 41.)

funded the escrow, as required to the Escrow Agreement, when Citibank knew Kraus was heavily relying upon the deposit of the money into the escrow.  Third, Citibank purported to close the escrow account (because it was not funded) without informing Kraus.  Fourth, Citibank favored LRG Capital over Kraus in performing its duties as escrow holder.  (Compl. ¶¶ 44–45.)

As to the breach of contract claim, Kraus alleges that Citibank breached the Escrow Agreement by, among other things, failing to abide by the notice provisions, including giving notice of resignation as the escrow agent, and failing to treat LRG Capital and Kraus equally in terms of notice and provision of material information.  (Compl. ¶ 56.)  As to the claim for breach of the implied covenant of good faith and fair dealing, Kraus alleges that the covenant imposed upon all parties the duty not to do anything to prevent the realization of the benefits of the contract and a duty to "do everything that the contract presupposes that each party will do to accomplish its purpose." (*Id.* ¶ 60.)  Citibank allegedly breached its duties by failing to notify Kraus of material information in contravention of the "notices" and "termination" provisions of the Escrow Agreement.  (*Id.* ¶ 61.)  By not informing Kraus that LRG Capital failed to fund the escrow, it breached the implied covenant of good faith and fair dealing.  (*Id.* ¶ 62.)

## II.  DISCUSSION

### A.  Legal Standard

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant.  Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir. 1984).  For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987).  Any existing ambiguities must be resolved in favor of the pleading.  *Walling v. Beverly Enters.,* 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action.  *Papasan v. Allain,* 478 U.S. 265, 286 (1986); *see also McGlinchy v. Shell Chem. Co.,* 845

F.2d 802, 810 (9th Cir. 1988). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atlantic. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Thus, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. *Lopez v. Smith,* 203 F.3d 1122, 1129 (9th Cir. 2000).

**B.    Analysis**

The Court views the issue of whether an escrow can be formed without deposit or transfer of the property subject to the escrow agreement to be a threshold issue, and thus addresses that issue first.

In its supplemental briefing, Citibank stated that it was unable to locate California authority directly addressing when an escrow agent's duties arise[5] but provided state and federal authorities from other jurisdictions holding that "an escrow agent's duty does not arise until it receives the money or property subject to the escrow agreement." (Citibank's Supplemental Brief at 1.) Specifically, Citibank identified authority from: the District of Kansas; the Court of Appeals of Kentucky; the Supreme Court, Appellate Division, in New York; and the Supreme Court of Nevada. Under these authorities, Citibank concludes Citibank owed *no duties* to Kraus because Kraus concedes that LRG Capital never funded the escrow and, consequently, the escrow was never created.

By contrast, Kraus argues that based on fiduciary, agency, or escrow law, "there is no question that the duty arose *at the latest* on May 24, 2006—when the parties, including Citibank, signed the escrow instructions." (Supplemental Memorandum of Points and Authorities of Plaintiff Regarding Creation of Fiduciary Duty in Escrow Arrangements [Dkt. No. 25 ("Kraus' Supplemental Brief")] at

---

[5] Citibank also identifies the general definition of an escrow provided in Cal. Fin. Code section 17003(a) and other California cases as authority that an escrow is not created until funds are delivered to the agent. (Supplemental Memorandum of Points and Authorities in Support of Motion to Dismiss Complaint by Defendant Citibank, N.A. [Dkt. No. 26 ("Citibank's Supplemental Brief")] at 4–5 (emphasizing that an escrow requires delivery, deposit, or transfer of money).)

1.) By that time, Kraus had reposed his confidence in Citibank and Citibank had accepted that confidence and knowingly undertook to act on behalf of Kraus, which made Citibank a fiduciary. In addition, Kraus relies heavily on the fact that Citibank affirmatively opened an escrow account, assigned an escrow number and an escrow officer, and "accepted the delivered underlying employment agreement into escrow." (*Id.*) Kraus asserts that this "deposit" of the Employment Agreement in the escrow was "essential consideration for creation of the escrow and the escrow duties of the parties." (*Id.* at 4; *see id.* at 5 (Employment Agreement was "consideration of extreme value").)[6]

The Court is persuaded by Citibank's authorities that an escrow cannot be created without deposit or transfer of the property at issue in the escrow agreement. Consequently, Citibank did not owe any duties to Kraus as an escrow agent or fiduciary absent funding by LRG Capital or some affirmative obligation specified in the parties' agreement.

*CCDC Holdings, Ltd. v. Smith*, Civ. A. No. 86-4365-0, 1988 WL 384417 (D. Kan. Oct. 5, 1988) is instructive. There, plaintiffs alleged that the escrow agent breached fiduciary duties arising from an escrow agreement by failing to hold shares of stock in escrow, terminating the escrow agreement, and failing to inform plaintiffs of certain facts. *Id.* at *10. More specifically, plaintiffs agreed to provide a capital contribution to certain defendants in exchange for stock, which was to be held in escrow by defendants' attorney Whitaker and his law firm. "[N]o items of value were deposited by either of the principals . . . into escrow" and plaintiffs sued. *Id.* Whitaker and his firm argued there was no valid escrow agreement and that even if an escrow was created, "the stock would

---

[6] Kraus also argues that the duties of an escrow agent extend beyond strictly following escrow instructions. Kraus urges that an escrow agent has "a fiduciary duty to communicate to his principal knowledge acquired in the course of his agency with respect to material facts which might affect the principal's decision as to a pending transaction, particularly where . . . he knows that the principal is looking to him for protection as to those very facts of which he has knowledge." (Opposition at 6 (quoting *Kirby v. Palos Verdes Escrow Co.*, 183 Cal. App. 3d 57, 64–65 (Cal. Ct. App. 1986)) (alteration supplied in Opposition).) Kraus argues that failure to disclose such material facts to party subjects the escrow agent to liability for non-disclosure. Kraus further argues that none of the cases cited by Citibank address the situation at hand—namely, that Citibank "purposely withheld material information at the core of the escrow . . . to favor its longstanding commercial client" and "that [Citibank] had resigned as escrow holder." (Opposition at 8.) Kraus' argument begs the question of whether the duty arose in the first place.

7

be issued only upon receipt of the $600,000 capital contribution from the plaintiffs." *Id.* The court first examined whether—in light of the uncontroverted fact that no stock was delivered into escrow—Whitaker and his firm had a duty as escrow holders to plaintiffs. Although it was unable to locate California authority on-point[7], the court was of the opinion, based on out-of-state authorities, that "because the stock was not delivered by [defendant] USLNC to Whitaker and the firm, Whitaker and the firm had no duties or liabilities as escrow holders." *Id.* at *11.

The *CCDC Holdings* decision relied, in part, on *Muscara v. Lamberti*, 133 A.D.2d 362 (N.Y. App. Div. 1987), wherein the defendant-former wife agreed to pay $20,000 to the plaintiff, her former husband. *Id.* at 362–63. The wife agreed to pay the money into an escrow account of her attorney. When plaintiff discovered the funds had never been delivered, he sued his former wife and her attorney to recover the sum. *Id.* at 363. Plaintiff argued that the attorney owed a duty to him as an escrowee. In affirming summary judgment in favor of the attorney, the court noted that "[a]n essential element of an escrow is the delivery of the subject of the escrow to the designated escrow agent." *Id.* (only upon delivery of the subject of the escrow does the escrow agent become the fiduciary of the parties). The court held that "[a]bsent delivery of the subject of the escrow, however, no escrow is created" and because the funds there were never delivered to the attorney, "he never became a fiduciary." *Id.* at 364 ("Any duty owed by him to the plaintiff as escrow agent would only have arisen *if and when* he received the $20,000 from his client in accordance with the agreement.") (emphasis supplied). *See also Hoffman v. Eighth Judicial District Court of the State of Nevada in and for the County of Clark*, 523 P.2d 848, 850 (Nev. 1974) (explaining that a valid escrow agreement requires, among other things, "delivery of the items on deposit to the escrow agent").

*Baker v. Coombs*, 219 S.W.3d 204 (Ky. Ct. App. 2007) is in accord. There, a former husband agreed to pay his former wife certain sums of money. As security for these payments, the wife was given liens on all of his stock holdings in a number of closely-held corporations, with the stock certificates to be held by the attorney representing the husband in the divorce proceedings. *Id.* at 205. The husband died without having provided the stock certificates to the attorney and having sold his interest in the largest corporation without perfecting the lien to the wife. The wife sued the attorney

---

[7] California law applied in *CCDC Holdings*.

for not holding the stock certificates and for allowing the businesses to be sold without taking action to assure that she would be paid what she was due under the agreement. *Id.* at 206. On appeal of the circuit court's grant of summary judgment in favor of the attorney, the wife argued that the attorney "had an affirmative obligation to obtain the stock certificates from [the husband], or to compel [him] to provide them, or to advise [her] that he [the attorney] had not obtained them." *Id.* In examining the agreement, the appellate court noted that the agreement "contained no provisions requiring [the attorney] to take affirmative steps to obtain the stock certificates or to notify anyone that he was not in possession of them." *Id.* at 207. Rather, the plain language only obligated him to hold and secure them once they were in his possession. Because the attorney never took possession of the stock certificates, his duties to the wife never arose. *Id.* at 208.

The authorities cited by Kraus do not compel a different result. Those authorities do not address or even contemplate the situation where an escrow is not funded or the subject property is not delivered. (*See* Kraus' Supplemental Brief at 3–4 (citing *Security-First Nat. Bank v. Clark*, 8 Cal. App. 2d 709, 712 (Cal. Ct. App. 1935) and *Walker v. Ticor Title Co. of California*, 204 Cal. App. 4th 363, 370 (Cal. Ct. App. 2012)).) As in *Baker*, a review of the Escrow Agreement reveals no affirmative obligation by Citibank to compel LRG Capital to fund the escrow, nor does the agreement require that Citibank inform Kraus of LRG Capital's failure to do so. Although Kraus points to the "Notices" provision of the Escrow Agreement as requiring Citibank to disclose the failure to fund, that provision simply dictates proper methods of giving notice *when* required under the agreement and requires that notice be given to all parties *if* one party *sends* notice to Citibank. It contains no obligation to provide Kraus with any specific piece of information.

The Court is also not persuaded by Kraus' argument that depositing the Employment Agreement in the escrow can substitute for the deposit of the funds because the Employment Agreement itself was "consideration for creation of the escrow." (Kraus' Supplemental Brief at 4.) Kraus' proffered authority is distinguishable. *See Brunoni v. Brunoni*, 93 Cal. App. 2d 215 (Cal. Ct. App. 1949). In *Brunoni*, a mother sought to sell property to her son for $6,500 and to execute a will dividing the rest of her estate equally among her children. *Id.* at 218. She executed the will and deed, and also signed a letter instructing her son's attorney to deliver the deed to the son upon his payment

9

of the purchase price and his promise to support her for the balance of her life. *Id.* at 219. The instructions and deed were delivered to the attorney. The mother died before the son paid any part of the purchase price, and it was only after her death that he paid the amount in full to the attorney-escrow agent, who in turn delivered the deed. *Id.* The *Brunoni* court noted that while a deed generally must be delivered *inter vivos*, there was an established exception that "when a valid escrow agreement is created and the death of the grantor intervenes prior to the delivery by the escrow agent to the grantee, the delivery relates back to the delivery by the grantor to the escrow agent and thus constitutes an *inter vivos* delivery." *Id.* (reversing judgment setting aside deed conveying property to son). Kraus has provided no reason why a rule relating to a contract for sale of real property and an after-death delivery of a deed held in escrow applies here. *Id.*

Without having the $250,000 to hold in escrow, and without having any independent obligation to inform Kraus of the failure to fund, Citibank's duties under the Escrow Agreement never arose because the escrow was never created. As such, Kraus' claims fail as a matter of law. Because the Court has determined that no escrow exists based on the undisputed fact that escrow was never funded, it need not address the parties' additional arguments raised in their briefs.

**III.   CONCLUSION**

For the foregoing reasons, Citibank's Motion to Dismiss Complaint is **GRANTED WITH PREJUDICE**.

This Order terminates Dkt. No. 7.

**IT IS SO ORDERED.**

Dated: September 25, 2013

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**